IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAVID LEE TAYLOR                                         PLAINTIFF

v.                          Civil No. 13-2108

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                          DEFENDANT

MEMORANDUM OPINION

Plaintiff, David Lee Taylor, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for disability insurance benefits ("DIB") and supplemental security income under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.      **Procedural Background**

Plaintiff applied for DIB and SSI on August 23, 2010. (Tr. 30.) Plaintiff alleged an onset date of January 1, 2003 due to severe anxiety, depression, high blood pressure, and psoriasis. (Tr. 30, 175.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an administrative hearing, which was held on June 30, 2011 in front of Administrative Law Judge ("ALJ") Bill Jones. (Tr. 47.) Plaintiff was present to testify and was represented by counsel.  The ALJ also heard testimony from Vocational Expert ("VE") Monty Lumpkin. (Tr. 48.)

At the time of the administrative hearing, Plaintiff was 47 years old, and had completed two years of college. (Tr. 171, 176.) The Plaintiff had past relevant work experience ("PRW") as a meat cutter. (Tr. 35.)

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

On August 2, 2011, the ALJ concluded that Plaintiff suffered from the following severe impairments: psoriasis; chronic dysthymia; anxiety disorder, NOS; personality disorder; NOS; and substance use disorder (alcohol). The ALJ found that "the claimant is under a disability, but that a substance use disorder is a contributing factor material to the determination of disability." (Tr. 31.) The ALJ found that, if the Plaintiff stopped the substance abuse, he would have the residual functional capacity to perform medium work, except "he is limited to simple, routine, and repetitive tasks, involving only simple work-related decisions, with few, if any work place changes; occasional interaction with co-workers, supervisors, and less than occasional interaction with the general public. He is to avoid concentrated exposure to wetness." (Tr. 37.) With the assistance of the VE, the ALJ determined that the Plaintiff could perform such representative occupations as cook/helper, hand packer, and hospital food service worker. (Tr. 41.)

Plaintiff requested a review by the Appeals Council ("AC") on October 7, 2011. (Tr. 25.) The AC declined review on November 30, 2011. (Tr. 7.) The AC later set aside this determination to consider additional information. On February 11, 2011, the AC denied the appeal. (Tr. 2.)

## II.    Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent

AO72A
(Rev. 8/82)

positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion**

Plaintiff raises one issue on appeal: the ALJ erred in finding that substance abuse (alcohol) was a contributing factor material to a finding of disability.  (Pl.'s Br. 10, 14, 16; Def.'s Br. 1.)

AO72A
(Rev. 8/82)

In 1996 the Social Security Act was amended to deny benefits to a claimant if alcoholism or drug addiction[2] was a contributing factor material to the determination of disability. 42 USCA § 423(d)(2).

Pursuant to 20 CFR § 416.935 (SSI), 20 CFR § 404.1535 (DIB), and SSR 13-2p, the "key factor" in determining if substance abuse is "material" is whether the claimant would still be disabled if the claimant stopped substance abuse. "The focus of the inquiry is on the impairments remaining if the substance abuse ceased, and whether those impairments are disabling, regardless of their cause." *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000) (citing 20 C.F.R. § 404.1535(b)(1); *Jackson v. Apfel*, 162 F.3d 533, 537-38 (8th Cir. 1998)).

The 1996 amendment thus added another layer to the familiar five-step disability evaluation. In order to determine if substance abuse is "material," the ALJ first evaluates all of the claimant's impairments, including the substance abuse. If the claimant is considered disabled at that point in the process, the ALJ must then project which of the impairments, if any, would remain at a disabling level if the claimant stopped their substance abuse. SSR 13-2p; *Brueggemann v. Barnhart*, 348 F.3d 689,694-95 (8th Cir. 2003).

"Determining whether a claimant would still be disabled if he or she stopped [the substance abuse] is, of course, simpler if the claimant actually has stopped." *Pettit*, 218 F.3d at 903. However, active and ongoing substance abuse does not automatically require a finding that the substance abuse is material. 13-2p; *Brueggemann,* 348 F.3d at 695. Rather, the ALJ must take on the difficult task of untangling the warp threads of the claimant's substance abuse from the woof threads of the claimant's other impairments in order to examine the hypothetical cloth that remains. "[A]lthough the task is difficult, the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he

---

[2]The Agency recognizes that terms alcoholism and drug addiction are medically outdated as opposed to the terms substance abuse or substance use disorder, but continues to use the terms and the abbreviation DAA because they are used in the statute. SSR 13-2p. For the purposes of this opinion, the term substance abuse will be used in place of DAA.

4

would on any other." *Snead v. Barnhart,* 360 F.3d 834, 839 (8th Cir. 2004); *Brueggemann,* 348 F.3d at 694-95 (citing *Pettit,* 218 F.3d at 903).

The burden of proving that DAA is not material falls on the claimant. *Id.* at 693. However, "[i]f the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow." *Id.* "In colloquial terms...a tie goes to [the claimant]." *Id.*

In this case, the ALJ stated that "absent substance abuse (alcohol), the totality of the evidence, especially the objective findings and clinical findings of treating physicians, together with the claimant's range of activities, clearly refute the claimant's contention that he is totally disabled from all forms of gainful employment." (Tr. 40.) After a careful review of the record, this Court agrees.

Plaintiff has been hospitalized numerous times for alcohol-related issues. In August 2002, Plaintiff was referred from Harbor House to St. Edward Mercy Medical Center ("St. Edward") for detoxification when he went into alcohol withdrawal. He was hospitalized for two days and discharged to Harbor House. (Tr. 263, 265.) He was hospitalized at St. Edward twice in September 2002. On September 15, four days after being released from Harbor House, he overdosed on blood pressure medicine and alcohol and called his ex-wife to tell her what he had done. He was brought to the ER and hospitalized for one day. (Tr. 277.) On September 26, he was admitted for two days after overdosing on Welbutrin and then immediately calling 911. (Tr. 266.) He was hospitalized in January 2003 after experiencing an alcohol withdrawal seizure while driving. (Tr. 268.) He was admitted to Vista Health for several days in October 2003 for depression and suicidal thinking. He was detoxified, given psychotropic medication, and discharged with a recommendation to follow up with Western Arkansas Counseling and Guidance. (Tr. 713-714.) The Vista Health records noted that he was in Harbor House for 45 days, but remained sober for less than two weeks after discharge. (Tr. 713.)

5

On March 29, 2007, Plaintiff's friends took him to Sparks Emergency Room because he "started having seizure activity, falling a lot, drinking a lot." (Tr. 326.) He refused admission for detoxification because he was "not ready." (Tr. 329.)  He presented at Sparks again on  April 6, 2010 complaining of fast heart rate. He was diagnosed with alcohol withdrawal, having had his last alcohol two hours before arriving at the hospital. (Tr. 375, 377.) He was hospitalized at Sparks from April 7-April 12, 2010 for alcohol withdrawal. He was discharged to "inpatient Psych in Little Rock." Discharge diagnosis was alcohol abuse, depression, uncontrolled hypertension and psoriatic arthritis. (Tr. 349.)

Plaintiff was admitted to Bridgeway Hospital April 12, 2010 for depression with suicidal ideation. The medical record notes he reported drinking 12-16 beers per day. (Tr. 289.) He was discharged on April 16, 2010. Discharge diagnosis for Axis I was Major depressive disorder, recurrent, severe and Ethanol Dependency. (Tr. 290.) Axis V was 21 on admission and 45 on discharge. (Tr. 290.)

Plaintiff then presented at Western Arkansas Guidance and Counseling ("WAGC"). Plaintiff was seen at WAGC on August 16, August  25, and September 9, 2010. (Tr. 383-92.) The September 9 examination was expressly for Social Security purposes. (Tr. 391.) Plaintiff filed for disability on August 23, 2010. (Tr .30.) On September 9, Plaintiff was diagnosed as follows:

> Axis I:  Generalized Anxiety Disorder
> Alcohol Dependency in FSR
> Major Depressive Disorder, Recurrent, Severe without psychosis
> R/O Anxiety and Mood Disorders due to Thyroid Disorder

(Tr. 391.) Axis II was deferred, while Axis V (GAF) was assessed at 45-55. (Tr. 391.)

Plaintiff presented at the Good Samaritan Clinic for increased blood pressure and psoriasis on October 5, 2010. (Tr. 438.) His record for this date includes a statement that he is "filing for disability due to anxiety, agoraphobia." (Tr. 438.) He presented for flu, psoriasis, anxiety and depression on October 26, 2010. (Tr. 437.) He received prescriptions each time.  Neither record mentions any report of alcohol issues.

6

Plaintiff was seen by consulting examiner Dr. Kathleen Kralik on October 8, 2010. (Tr. 405.) Dr. Kralik noted that she had seen the Plaintiff in 2008 for an earlier Social Security claim. (Tr. 405.) Dr. Kralik noted his previous stay at Bridgeway for suicidal ideation earlier in 2010, and also noted that he failed to report his stay at Harbor House for alcohol treatment in 2004. (Tr. 406.)She noted"significant inconsistencies in his reports and functioning over time..." (Tr. 406.) Dr. Kralik diagnosed Plaintiff as follows:

> Axis I:   V65.2   Malingering/exaggeration of mental symptoms as impacting participation in gainful occupation endeavors as defined by DDSA.
> 300.4   Dysthymia, chronic
> 300   Anxiety Disorder not otherwise specified (selective social phobia, allegedly with panic)
> 305.00   Alcohol abuse; binge drinking pattern, likely in sustained partial remission -- in association with economic limitations; rule out ongoing abuse dependence
> Axis II: 301.9  Personality Disorder NOS (with parasitic-dependent, avoidant, and likely passive-aggressive features; rule out antisocial and/or narcissistic personality features.)

(Tr. 410.) Plaintiff's Axis V (GAF) scores were 55-65 for each time point. (Tr. 410.) Dr. Kralik further noted "Examiner does not doubt claimant may have some longstanding anxiety and dysthymia issues; but these do not seem to have ever been of a nature or severity such as to preclude his participation in gainful occupational endeavors if he so chose *and* saw it as both necessary and to his advantage to work."(Tr. 409.)

In assessing his adaptive functioning, she assessed nothing worse than "at most moderately impaired," with several areas assessed as "adequate for occupational purposes." (Tr. 410-11.)  She also stated:  "Even if it is assumed his problems are as he purports here and to Mr. Stearman [of WAGC], it seems to be well within claimant's means and capacities. . .to access treatment and information likely to bring his alleged symptoms under sufficient control such as to enable him to participate in gainful occupational endeavors. . ." (Tr. 412.) She also noted that she had advised him in 2008 of a variety of ways he could control anxiety, including inexpensive medication through indigent medical clinics. (Tr. 405.)

7

On January 17, 2011, Mr. Stearman of WAGC diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood. He was discharged from clinic care on January 18, 2011 because he "failed to keep appointments." (Tr. 490, 493.) Mr. Stearman further stated "The client has had some minimal success with medication then cancelled his last appointment and has not been seen in over 4 months. He has no current appointment and never followed up with therapy." (Tr. 493.)

The next evidence of medical treatment in the record begins one and a half months before Plaintiff's ALJ hearing on June 30, 2011. Plaintiff began attending day treatment at WAGC on May 17, 2011.(Tr. 449.) He testified that this treatment was available four days a week, and that WAGC picked him up and dropped him off to attend this treatment. (Tr. 60.) His Axis I diagnosis on May 22, 2014 indicated Depressive disorder and alcohol abuse, with a GAF of 50. In his May 17 record, it is noted that "[d]uring the past 12 months, client used larger amounts of alcohol, or used them for a longer time than intended. Client tried to cut down on alcohol use but was unable to do it." (Tr. 450.) The final appointment record in the transcript is dated June 22, 2011. (Tr. 483.) In that record he reports that "he is staying sober at this point." (Tr. 484.)

The ALJ attempted to determine Plaintiff's periods of sobriety at the hearing on June 30, but Plaintiff testified that he last drank on June 27th for his birthday; a mere three days prior to the hearing. (Tr. 54.) Upon further questioning, Plaintiff testified that he drinks "every two weeks or three weeks" because he doesn't have any income. (Tr. 54.) This testimony directly contradicts what he told the WAGC counselors on June 22.

The ALJ also questioned Plaintiff about his other health issues and medication. Plaintiff testified that his Prozac, blood pressure, thyroid, and sleeping medication were helping his other symptoms, and were not producing side effects. (Tr. 53.) Thus, all of his other health issues appear to be treatable. This testimony is congruent with Dr. Kralik's assessment of his depression and anxiety. It is congruent with his prior medical history, where his mood and affect improved considerably with detoxification and

8

psychotropic medication. ( Tr. 289-90, 713-14. ) It is congruent with the Good Samaritan Clinic records that his hypertension was controlled after he took his medication, and his psoriasis was improved. (Tr. 437.) See *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012)("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

Given that Plaintiff has gone into alcohol withdrawal in as little as two hours after his last drink in the past, given his medical history, and given the sometimes blatant inconsistencies, malingering, and exaggeration in the record, it appears that there were no significant periods of sobriety to evaluate. Medical records that might have provided some limited information about Plaintiff's functioning during more lengthy enforced periods of sobriety, such as Plaintiff's inpatient stay at Harbor House or his incarceration for check fraud, were not provided.

Without any significant periods of sobriety to use in evaluating Plaintiff's functioning in the absence of alcohol abuse, the ALJ relied heavily upon the function reports provided by the Plaintiff and his friend, Kevin Cole. (Tr. 36-40.) He also relied upon the information provided by Dr. Kralik and other treating and examining physicians. Given Plaintiff's lack of credibility, the ALJ's reliance upon the Plaintiff's and Mr. Coles' reports gave the Plaintiff considerable benefit of the doubt in his analysis. *See. e.g. Ellis v. Barnhart*, 392 F.3d 988, 993 (despite Plaintiff's lack of credibility, ALJ gave claimant benefit of the doubt in assessing RFC of sedentary work).

The ALJ fully and fairly developed the record concerning Plaintiff's substance abuse, including giving Plaintiff considerable benefit of the doubt in his analysis. Based on this record, the Plaintiff was unable meet his burden of proving that his substance abuse was not material.

## IV.   Conclusion

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decisions, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

AO72A
(Rev. 8/82)

DATED this 10th day of June 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

10